1  McGREGOR W. SCOTT
   United States Attorney
2  NIRAV K. DESAI
   KEVIN C. KHASIGIAN
3  Assistant United States Attorneys
   501 I Street, Suite 10-100
4  Sacramento, CA 95814
   Telephone: (916) 554-2700
5  Facsimile: (916) 554-2900

6  Attorneys for Plaintiff
   United States of America
7

**FILED**

FEB 2 0 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
              DEPUTY CLERK

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              CASE NO. 2:17-cr-053 JAM

12                         Plaintiff,      PLEA AGREEMENT AS TO DEFENDANT
                                           **TIMOTHY CHAPIN**
13              v.
                                           DATE:   FEBRUARY 20, 2018
14  TIMOTHY CHAPIN,                        TIME:   9:15 A.M.
    MANUEL AGUEROS,                        COURT:  Hon. JOHN A. MENDEZ
15  PAUL FOURNIER,
    ROBERT LAUTENSLAGER,
16  JEFFREY REILLEY,
    JORGE EGUILUZ,
17
                           Defendants.
18

19

20                    I.    **INTRODUCTION**

21  A.    **Scope of Agreement.**

22      The indictment in this case charges defendant Timothy Chapin ("defendant") with: two counts

23  of Conspiracy to Commit Mail and/or Wire Fraud in violation of 18 U.S.C. § 1349 (Counts One,

24  Fourteen, and Nineteen); five counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts Two

25  through Four, and Twenty through Twenty-One); fourteen counts of wire fraud in violation of 18 U.S.C.

26  § 1343 (Counts Five through Twelve, Fifteen through Seventeen, and Twenty-Two through Twenty-

27  Four); and three counts of Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C.

28  § 1956(h) (Counts Thirteen, Eighteen, and Twenty-Five). There is also a forfeiture allegation in the

indictment.

This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.      Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.      DEFENDANT'S OBLIGATIONS

**A.      Guilty Plea.**

The defendant will plead guilty to: Count One of the indictment, charging Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349; and Count Thirteen, charging Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(h). The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Pleas attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his pleas should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this plea agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this plea agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this plea agreement generally.

**B.** **Restitution.**

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. The defendant agrees the conduct to which he is pleading guilty requires mandatory restitution pursuant to 18 U.S.C. §§ 3663A(c)(1)(A)(ii) and 3663A(c)(1)(B), and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis and victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3). The defendant agrees to pay restitution to the victims for the total loss to the victims as a result of the schemes, conspiracies, and patterns of criminal conduct in an amount between $1,900,000.00 and $2,300,000.00.

Notwithstanding the immediately preceding paragraph, the defendant agrees to pay restitution pursuant to 18 U.S.C. § 3663(a)(3) to the victims of the schemes, conspiracies, and patterns of criminal conduct in an amount between $1,900,000.00 and $2,300,000.00.

The defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

Payment of restitution shall be due and payable immediately upon sentencing and shall be by cashier's or certified check made payable to the Clerk of the Court.

**C.** **Fine.**

The defendant agrees to pay any fine the Court imposes. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

**D.** **Special Assessment.**

The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering

1 a check or money order payable to the United States District Court to the United States Probation Office

2 immediately before the sentencing hearing. The defendant understands that this plea agreement is

3 voidable at the option of the government if he fails to pay the assessment prior to that hearing. If the

4 defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money

5 to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

6     **E.**    <u>Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).</u>

7     If the defendant, cooperating or not, violates this plea agreement in any way, withdraws his plea,

8 or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the

9 government elects to void the agreement based on the defendant's violation, the government will no

10 longer be bound by its representations to the defendant concerning the limits on criminal prosecution

11 and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or

12 providing or procuring any statement or testimony which is knowingly false, misleading, or materially

13 incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct

14 constituting obstruction of justice. Varying from stipulated Guidelines application or agreements

15 regarding arguments as to 18 U.S.C. § 3553, as set forth in this agreement, personally or through

16 counsel, also constitutes a violation of the plea agreement. The government also shall have the right

17 (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any

18 counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would

19 otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for

20 any federal criminal violation of which the government has knowledge. The decision to pursue any or

21 all of these options is solely in the discretion of the United States Attorney's Office.

22     By signing this plea agreement, the defendant agrees to waive any objections, motions, and

23 defenses that the defendant might have to the government's decision. Any prosecutions that are not

24 time-barred by the applicable statute of limitations as of the date of this plea agreement may be

25 commenced in accordance with this paragraph, notwithstanding the expiration of the statute of

26 limitations between the signing of this plea agreement and the commencement of any such prosecutions.

27 The defendant agrees not to raise any objections based on the passage of time with respect to such

28 counts including, but not limited to, any statutes of limitation or any objections based on the Speedy

1 | Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as

2 | of the date of this plea agreement. The determination of whether the defendant has violated the plea

3 | agreement will be under a probable cause standard.

4 | In addition, (1) all statements made by the defendant to the government or other designated law

5 | enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,

6 | whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or

7 | administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

8 | claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal

9 | Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by

10 | the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

11 | By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

12 | **F.** **Forfeiture.**

13 | The defendant agrees to forfeit to the United States voluntarily and immediately all of his right

14 | title and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C),

15 | 982(a)(1), and 28 U.S.C. § 2461(c). Those assets include, but are not limited to, the following:

16 | 1. Approximately $30,000.00 in U.S. Currency; and

17 | 2. Approximately $165,172.25 in net proceeds from the sale of real property located at

18 | 16749 Forty Niner Trail, in Lathrop, California, APN: 191-370-530-000.

19 | Additionally, assets subject to forfeiture include all right, title, or interest the defendant has in the

20 | following:

21 | 3. Approximately $331,956.60 seized from Charles Schwab Account Number 1213-

22 | 6532, held in the name of Paul Fournier;

23 | 4. Approximately $50,660.10 seized from Vanguard Account Number 0540-

24 | 88079073938, held in the name of Paul Fournier;

25 | 5. Approximately $7,167.31 seized from Vanguard Account Number 0040-

26 | 88063595422, held in the name of Paul Fournier;

27 | 6. Approximately $1,844.15 seized from Vanguard Account Number 0040-

28 | 88060247883, held in the name of Paul Fournier;

| | | |
|---|---|---|
| 1 | 7. | Approximately $15,368.53 seized from Wells Fargo Bank Account Number |
| 2 | | 5763134987, held in the name of Paul Fournier; |
| 3 | 8. | Approximately $3,375.09 seized from Wells Fargo Bank Account Number |
| 4 | | 5917189986, held in the name of Paul Fournier; |
| 5 | 9. | Approximately $8,817.73 seized from Wells Fargo Bank Account Number |
| 6 | | 9894553933, held in the name of Industrial Precision, LLC; |
| 7 | 10. | Approximately $9,724.22 seized from Wells Fargo Bank Account Number |
| 8 | | 1483149173, held in the name of Industrial Precision, LLC; and |
| 9 | 11. | Approximately $2,970.36 seized from Bank of America Account Number |
| 10 | | 457024979427, held in the name of CK Renewables, LLC. |

11   The defendant agrees that the above-listed assets constitutes proceeds of, and are traceable to, his

12   violation of 18 U.S.C. §§ 1349 and 1956(h).

13       The defendant agrees to fully assist the government in the forfeiture of the listed assets and to

14   take whatever steps are necessary to pass clear title to the United States. The defendant shall not sell,

15   transfer, convey, or otherwise dispose of any of his asset(s), including but not limited to, the above-listed

16   asset(s).

17       The defendant agrees not to file a claim to any of the listed property in any civil proceeding,

18   administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of

19   any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a

20   claim in that forfeiture proceeding.

21       The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of

22   assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses

23   to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense,

24   and agrees to waive any claim or defense under the Eighth Amendment to the United States

25   Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States,

26   the State of California or its subdivisions.

27       The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any

28   defenses or defects that may pertain to the forfeiture.

The parties agree that any portion of net proceeds from the forfeited assets that are paid to victims through the remission or restoration process, shall be credited to the defendant's restitution obligation.

**G.     Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above, above.

**H.     Agreement to Cooperate.**

The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this plea agreement, "cooperation" requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not to participate in any criminal activity while cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators.

**III.     THE GOVERNMENT'S OBLIGATIONS**

**A.     Dismissals.**

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment as to this defendant (Counts Two through Twelve, and

1  Fourteen through Twenty-Five). The government also agrees not to reinstate any dismissed count

2  except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea

3  Agreement by Defendant/Withdrawal of Plea(s)), III.B.3 (Reduction of Sentence for Cooperation), VI.B

4  (Estimated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

5  **B.  Recommendations.**

6      1.  Incarceration Range.

7  The government agrees to recommend that the defendant be sentenced to the low end of

8  the applicable guideline range as determined by the Court. This sentence might or might not be reduced

9  pursuant to a motion filed by the government pursuant to U.S.S.G. § 5K1.1.

10      2.  Acceptance of Responsibility.

11  The government will recommend a two-level reduction (if the offense level is less than

12  16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if

13  the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. §

14  3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of

15  the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging

16  in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the

17  preparation of the pre-sentence report or during the sentencing proceeding.

18      3.  Reduction of Sentence for Cooperation.

19  The government agrees to recommend at the time of sentencing that the defendant's

20  sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if he provides

21  substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that

22  he must comply with paragraphs II.H and not violate this plea agreement as set forth in paragraph II.E

23  herein. The defendant understands that it is within the sole and exclusive discretion of the government

24  to determine whether the defendant has provided substantial assistance.

25  The defendant understands that the government may recommend a reduction in his

26  sentence of less than 50% or no reduction at all; depending upon the level of assistance the government

27  determines that the defendant has provided.

28  The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a

recommendation and is not binding on the Court, that this plea agreement confers no right upon the

defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers

no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion.  In

particular, the defendant agrees not to try to file a motion to withdraw his guilty plea(s) based on the fact

that the government decides not to recommend a sentence reduction or recommends a sentence

reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within

one year following sentencing, the government may move for a further reduction of his sentence

pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

**C.      Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation,

including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate

statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also

understands and agrees that nothing in this plea agreement bars the government from defending on

appeal or collateral review any sentence that the Court may impose.

## IV.      ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following

elements of the offenses to which the defendant is pleading guilty:

**Count One of the indictment, Conspiracy to Commit Mail and Wire Fraud in violation of**

**18 U.S.C. § 1349**:  The government would have to prove that (1) between the dates stated in Count One

of the indictment, there was an agreement between two or more persons to commit either wire fraud or

mail fraud; and (2) the defendant became a member of the conspiracy knowing of at least one of its

objects and intending to help accomplish that object of the conspiracy.

The elements of mail fraud, 18 U.S.C. § 1341, are:  (a) the defendant knowingly devised or

participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by

means of false or fraudulent pretenses, representations, or promises, or the concealment of material

facts; (b) the statements made or facts omitted as part of the scheme were material, that is, they had a

natural tendency to influence, or were capable of influencing, a person to part with money or property;

(c) the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and (d) the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

The elements of wire fraud, 18 U.S.C. § 1343, are: (a) the defendant knowingly devised or participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or the concealment of material facts; (b) the statements made or facts omitted as part of the scheme were material, that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (c) the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and (d) used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

**Count Eighteen of the indictment, Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(h):** The government would have to prove that there was (1) an agreement between two or more persons to commit a money laundering offense, and (2) the defendant knowingly and voluntarily joined in the agreement. As to the object offense of concealment money laundering, to convict a person for money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), the government must prove that (1) the defendant conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of unlawful activity; (3) the defendant knew that the proceeds were from unlawful activity; and (4) the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. As to the specified unlawful activity, mail fraud and wire fraud, the elements of which are described above, are specified unlawful activities. 18 U.S.C. §§ 1956(c)(7)(A), 1961(1)(B).

The defendant fully understands the nature and elements of the crimes charged in the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty.

The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1349

(Conspiracy to Commit Mail and Wire Fraud) is 20 years of incarceration, a fine of $250,000, a three-year period of supervised release and a special assessment of $100. The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1956(h) (Conspiracy to Launder Monetary Instruments) is 20 years of incarceration, a fine of $500,000 or twice the value of the property involved in the transactions, a three-year period of supervised release and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B.** **Violations of Supervised Release.**

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years of imprisonment.

## VI. SENTENCING DETERMINATION

**A.** **Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.** **Estimated Guideline Calculation.**

The government and the defendant agree that the following is their present best estimate of the

sentencing guidelines variables. These estimates shall not be binding on the Court, the Probation Office, or the parties:

1.    Base Offense Level: 7  [U.S.S.G. § 2B1.1(a)(1) – the offense of conviction is referenced to § 2B1.1 and has a statutory maximum term of imprisonment of 20 years]

2.    Loss Amount: +16 levels [U.S.S.G. § 2B1.1(b)(1)(I) – the actual loss is at least $1,900,000]

3.    Sophisticated Means: +2 [U.S.S.G. § 2B1.1(b)(10) & cmt. n.9 – the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means; to wit, hiding assets and transactions through the use of multiple fictitious/shell limited liability corporate entities to submit fraudulent invoices to the victim companies and to receive payments on those invoices]

4.    Special Offense Characteristic: +2 [U.S.S.G. § 2S1.1(b)(2)(B) – defendant convicted under 18 U.S.C. § 1956(h)]

5.    Adjusted Offense Level:  27

6.    Acceptance of Responsibility:  See paragraph III.B.2 above

7.    The parties dispute, and leave open for argument in connection with sentencing, whether the defendant occupied an aggravating role in the offenses, as described in U.S.S.G. § 3B1.1.

8.    The parties estimate, but do not stipulate, that the defendant's criminal history category will be "I."

9.    Sentencing Range:  If no aggravating role enhancement is applied under § 3B1.1, the parties estimate an advisory sentencing range of 51 to 63 months of imprisonment (OL24/I).  If a maximum aggravating role enhancement is applied (a four-level increase), the parties estimate an advisory sentencing range of 78 to 97 months of imprisonment (OL 28/I).  (The defendant understands that if the criminal history category differs from the parties' estimate, his Guidelines sentencing range may differ from that set forth here.)

10.    Departures or Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on the defendant's cooperation (§5K1.1) or post-plea obstruction of justice (§3C1.1). Except as provided below, both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines, or any deviance or variance from the Sentencing Guidelines under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

The defendant is free to recommend to the Court whatever sentence he believes is

1 | appropriate as a downward variance under the factors in 18 U.S.C. § 3553(a), except that the defendant

2 | shall not under any circumstances (including after the grant of any motion under § 5K1.1) seek or argue

3 | for a sentence lower than 24 months of incarceration. The defendant agrees that a sentence of 24

4 | months of incarceration is the absolute lowest sentence he may seek or argue for under any

5 | circumstance.

VII.    <strong><u>WAIVERS</u></strong>

**A.    <u>Waiver of Constitutional Rights.</u>**

8 | The defendant understands that by pleading guilty he is waiving the following constitutional

9 | rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

10 | be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to

11 | testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be

12 | compelled to incriminate himself.

**B.    <u>Waiver of Appeal and Collateral Attack.</u>**

14 | The defendant understands that the law gives the defendant a right to appeal his guilty plea,

15 | conviction, and sentence. The defendant agrees as part of his pleas, however, to give up the right to

16 | appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not

17 | exceed the statutory maximums for the offenses to which he is pleading guilty. The defendant

18 | specifically gives up the right to appeal any order of restitution the Court may impose.

19 | Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if

20 | one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

21 | statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant

22 | understands that these circumstances occur infrequently and that in almost all cases this plea agreement

23 | constitutes a complete waiver of all appellate rights.

24 | In addition, regardless of the sentence the defendant receives, the defendant also gives up any

25 | right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any

26 | aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

27 | Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever

28 | attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any

1  of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E

2  herein.

3      **C.      Waiver of Attorney's Fees and Costs.**

4      The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

5  119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the

6  investigation and prosecution of all charges in the above-captioned matter and of any related allegations

7  (including without limitation any charges to be dismissed pursuant to this plea agreement and any

8  charges previously dismissed).

9      **D.      Impact of Plea on Defendant's Immigration Status.**

10      Defendant recognizes that pleading guilty may have consequences with respect to his

11  immigration status if he is not a citizen of the United States. If convicted, a defendant who is not a

12  United States citizen may be removed from the United States, denied citizenship, and denied admission

13  to the United States in the future. Under federal law, a broad range of crimes are removable offenses,

14  including offenses to which the defendant is pleading guilty. The defendant and his counsel have

15  discussed the fact that the charges to which the defendant is pleading guilty are an aggravated felony, or

16  a crime that is likely to be determined to be an aggravated felony under 8 U.S.C. § 1101(a)(43), and that

17  while there may be arguments that a defendant can raise in immigration proceedings to avoid or delay

18  removal, it is virtually certain that the defendant will be removed if he is not a citizen of the United

19  States. Removal and other immigration consequences are the subject of a separate proceeding, however,

20  and the defendant understands that no one, including his attorney or the district court, can predict to a

21  certainty the effect of his convictions on his immigration status. The defendant nevertheless affirms that

22  he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the

23  consequence is his automatic removal from the United States.

24              **VIII.      ENTIRE PLEA AGREEMENT**

25      Other than this plea agreement, no agreement, understanding, promise, or condition between the

26  government and the defendant exists, nor will such agreement, understanding, promise, or condition

27  exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and

28  counsel for the United States.

PLEA AGREEMENT (TIMOTHY CHAPIN)              14
CASE NO. 2:17-CR-053 JAM

# IX.    APPROVALS AND SIGNATURES

## A.    Defense Counsel.

I have read this plea agreement, including Exhibit A, and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 2/20/18

_____
SEAN RIORDAN
Assistant Federal Defender
Attorney for Defendant TIMOTHY CHAPIN

## B.    Defendant:

I have read this plea agreement and carefully reviewed every part of it, including Exhibit A, with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated:

2/26/18

_____
TIMOTHY CHAPIN
Defendant

## C.    Attorney for United States:

I accept and agree to this plea agreement on behalf of the government.

Dated: 2/20/18

McGREGOR W. SCOTT
United States Attorney

_____
NIRAV K. DESAI
Assistant United States Attorney

Factual Basis for Pleas

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

At all relevant times, NextEra Energy Resources, LLC ("NextEra") was an energy generation company headquartered in the State of Florida, which owned and operated High Winds, LLC ("High Winds"), with an accounts payable department located in the State of Florida. NextEra and High Winds operated wind turbines at wind energy generation sites, or wind farms, located in Birds Landing, California ("Wind Facility"), in Solano County, in the State and Eastern District of California. NextEra and High Winds paid invoices for parts and services from Florida, either by check or by way of an Automated Clearing House ("ACH") electronic payment system that processed payments through Bank of America in the State of Texas prior to being deposited in the payee's bank account.

At all relevant times, defendant Timothy Chapin ("Chapin") was employed by NextEra as a senior business technician and worked at the Wind Facility operated by High Winds. Chapin's job duties included, among other things, managing the parts inventory at the Wind Facility and ordering spare parts and services related to maintenance of the wind turbines and equipment at the Wind Facility. Chapin resided in Lathrop, California, in San Joaquin County, in the Eastern District of California.

During relevant time periods, Manuel Agueros was employed by NextEra as a wind site manager at the Wind Facility operated by High Winds, and elsewhere. At all relevant times, Jeffrey Reilley was employed by NextEra as a regional wind site manager at the Wind Facility operated by High Winds, and elsewhere, and was one of Chapin's supervisors. At all relevant times, Paul Fournier was a resident of the State of Arizona. Fournier and Chapin met online playing video games.

Beginning no later than October 2010, and continuing through in or around February 2016, in Solano and San Joaquin Counties, in the State and Eastern District of California, and elsewhere, Chapin and Fournier knowingly conspired, combined, confederated, and agreed with each other to execute through the use of the mails, and to cause signs and signals to be transmitted by means of wire and radio communications in interstate commerce in furtherance of, a material scheme and artifice to defraud NextEra and High Winds, and to obtain money and property from NextEra and High Winds by means of

1   materially false and fraudulent pretenses, representations, promises, and the concealment of material

2   facts. The purpose of the conspiracy was to secretly obtain money from NextEra and High Winds by

3   submitting materially false and fraudulent invoices from purported vendor companies, namely,

4   Industrial Precision, LLC, Universal Plan Service, LLC, and CK Renewables, LLC, that charged

5   NextEra and High Winds for obligations that NextEra and High Winds did not owe. Chapin and

6   Fournier began the conspiracy and schemes to defraud, and Agueros and Reilley later joined the

7   conspiracy and schemes to defraud.

8        In furtherance of the conspiracy and scheme to defraud, Chapin, Fournier, Agueros, and Reilley

9   employed the following manner and means, among others. Part of the scheme involved the creation and

10   use of several shell companies to, among other things, submit false and fraudulent invoices to NextEra

11   and High Winds, and to receive payments. Those shell companies included Industrial Precision, LLC,

12   Universal Plant Service, LLC, and CK Renewables, LLC (collectively, "Shell Companies"), and they

13   had no facilities and provided no actual products or services. With Chapin's agreement, Fournier

14   created and registered each of the Shell Companies, established bank accounts in the Shell Companies'

15   names, and executed Federal Electronic Data Interchange Agreements ("FEDI Agreement") between

16   each of the Shell Companies and NextEra to facilitate electronic payments to the Shell Companies'

17   respective bank accounts.

18        Chapin, Fournier, Agueros, and Reilley actually submitted and caused to be submitted, and

19   approved, materially false and fraudulent invoices and false supporting documents to NextEra and High

20   Winds. The invoices were submitted in the names of the Shell Companies, seeking payment for parts

21   and services not actually provided, and never intended to be provided, to NextEra and High Winds by

22   the Shell Companies. As part of the scheme, Chapin, from the Wind Facility and elsewhere in the

23   Eastern District of California, caused purchase orders for products and services not actually needed at

24   the Wind Facility to be generated and sent to the Shell Companies controlled by Fournier. The creation

25   of these false and fraudulent purchase orders resulted in the submission of false and fraudulent invoices

26   to NextEra and High Winds in the names of, and seeking payments to, the Shell Companies.

27        Calculated as of June 30, 2017, Chapin, Fournier, and others actually obtained approximately

28   $1,922,524.89 to which they were not entitled as a result of the materially false and fraudulent invoices

submitted to NexEra and High Winds in the names of the Shell Companies. The submission of the false

and fraudulent invoices resulted in payments by check and ACH payments to the Shell Companies.

Payments on fraudulent invoices were accomplished, in part, through the mailing of checks from

the accounts payable department of High Winds to the Shell Companies, including, but not limited to,

the following:

| Approximate Mailing Date | Mail Matter |
| --- | --- |
| April 13, 2012 | Check No. 5000002866, dated April 13, 2012, in the amount of $9,400, made payable to Universal Plant Service, LLC. Deposited into JP Morgan Chase account number ending 6445. |
| April 20, 2012 | Check No. 5000002876, dated April 20, 2012, in the amount of $8,812.50, made payable to Universal Plant Service, LLC. Deposited into JP Morgan Chase account number ending 6445. |
| May 23, 2012 | Check No. 5000002901, dated May 23, 2012, in the amount of $5,500, made payable to Universal Plant Service, LLC. Deposited into JP Morgan Chase account number ending 6445. |

Payments on fraudulent invoices were also accomplished, in part, through electronic ACH

payments originating from the accounts payable department of High Winds, processed through Bank of

America in Dallas, Texas, and then made to the Shell Companies' accounts in Arizona, including, but

not limited to, the following:

| Approximate Date of Wire | Wire From | Wire To | Contents of Wire |
| --- | --- | --- | --- |
| May 24, 2012 | Electronic payment of funds processed through Bank of America in Dallas, TX | Industrial Precision, LLC account ending 9173, at Wells Fargo Bank, in Arizona | Electronic payment of funds in amount of approx. $16,020 |
| October 18, 2012 | Electronic payment of funds processed through Bank of America in Dallas, TX | Universal Plant Service, LLC account ending 6445, at JP Morgan Chase Bank, in Arizona | Electronic payment of funds in amount of approx. $59,750 |
| March 28, 2013 | Electronic payment of funds processed through Bank of America in Dallas, TX | CK Renewables, LLC account ending 9427, at Bank of America, in Arizona | Electronic payment of funds in amount of approx. $12,484.04 |
| June 20, 2013 | Electronic payment of funds processed through Bank of America in Dallas, TX | Industrial Precision, LLC account ending 9173, at Wells Fargo Bank, in Arizona | Electronic payment of funds in amount of approx. $82,650 |

| Approximate Date of Wire | Wire From | Wire To | Contents of Wire |
|---|---|---|---|
| May 8, 2014 | Electronic payment of funds processed through Bank of America in Dallas, TX | CK Renewables, LLC account ending 9427, at Bank of America, in Arizona | Electronic payment of funds in amount of approx. $28,089.09 |
| November 20, 2014 | Electronic payment of funds processed through Bank of America in Dallas, TX | CK Renewables, LLC account ending 9427, at Bank of America, in Arizona | Electronic payment of funds in amount of approx. $24,317.60 |
| August 20, 2015 | Electronic payment of funds processed through Bank of America in Dallas, TX | Industrial Precision, LLC account ending 9173, at Wells Fargo Bank, in Arizona | Electronic payment of funds in amount of approx. $29,855 |
| October 29, 2015 | Electronic payment of funds processed through Bank of America in Dallas, TX | CK Renewables, LLC account ending 9427, at Bank of America, in Arizona | Electronic payment of funds in amount of approx. $19,974.04 |

Additionally, beginning in or around October 2016, and continuing through in or around February 2016, in the State and Eastern District of California and elsewhere, Chapin and Fournier knowingly combined, conspired, and agreed with each other to conduct financial transactions involving the money stolen from NextEra and High Winds through the mail and wire fraud schemes to conceal and disguise the nature, location, source, ownership, and control of the fraud proceeds. After the money was mailed by check or electronically transferred into the accounts of the Shell Companies, Fournier moved a portion of the money, in the form of U.S. currency, to the Eastern District of California for payment to Chapin, Reilley, and Agueros. Fournier moved the money by either withdrawing U.S. currency in Arizona and flying or driving the currency to California, or by traveling to California and then withdrawing the U.S. currency. Fournier retained his share of the fraud proceeds.

Chapin also assisted in two other versions of the conspiracies and schemes to defraud. First, Agueros and defendant Jorge Eguiluz, with Chapin's assistance in processing invoices, carried out the same scheme to steal from NextEra and High Winds through use of the entity called J. Eguiluz Labor Service LLC, a labor contracting business owned, operated, and controlled by Eguiluz and headquartered in Stockton, California. J. Eguiluz Labor Service LLC was not a wind generation parts

1  supplier or servicer, but invoices were submitted to NextEra and High Winds seeking payment for parts

2  and services not actually provided. As a result of that conspiracy and scheme to defraud, Chapin,

3  Agueros, and Eguiluz obtained approximately $240,000 from NextEra and High Winds to which they

4  were not entitled. Second, Chapin and defendant Robert Lautenslager carried out the same scheme to

5  steal from NextEra and High Winds through use of a shell company called Precision Metalworks, LLC,

6  which was created by Lautenslager and had no legitimate business purpose. Chapin and Lautenslager

7  caused invoices to be submitted to NextEra and High Winds in Precision Metalworks, LLC's name

8  seeking payment for parts and services not actually provided. As a result of that conspiracy and scheme

9  to defraud, Chapin, Lautenslager, and possibly others, obtained approximately $130,406 from NextEra

10  and High Winds to which they were not entitled.

11      On February 22, 2016, the United States seized $30,000 in U.S. currency from Chapin. On that

12  date, Chapin voluntarily advised federal law enforcement agents of the existence of that currency and

13  gave it to them, stating that the currency was proceeds of his fraud schemes. On or about May 12, 2016,

14  the United States seized $165,172.25 in net proceeds from the sale of Chapin's residence in Lathrop,

15  CA. Chapin admits that these assets are proceeds of the conspiracies and schemes to defraud described

16  above, or are traceable to that conspiracies and schemes to defraud.

17

18  *I have read and carefully reviewed the Factual Basis for Pleas with my attorney. I agree that it is*
19  *correct and accurate. I also agree that if this matter proceeded to trial, the United States could*
    *establish each of the facts contained within the Factual Basis for Plea beyond a reasonable doubt, and*
20  *that those facts satisfy the elements of the offense to which I am pleading guilty.*

21  Dated:
22      2·20 -18

23                                          Defendant TIMOTHY CHAPIN

24

25

26

27

28